IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff/Counterdefendant, ) | |
| ) | |
| v. ) | Case No. 3:04-0083 |
| ) | |
| THE IN CROWD, INC., AMERICAN COMMUNITY ) | Judge Thomas A. Wiseman, Jr. |
| SERVICES, INC., RODNEY A. RANKINS, ) | |
| TOLLINY J. RANKINS, LeVAN P. ELLIS, ) | |
| EDWARD W. SCOTT, RONALD F. SCOTT, ) | |
| FE DePIERO, and ANTHONY C. DePIERO, ) | |
| ) | |
| Defendants/Counterplaintiffs. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff-Counterdefendant Nautilus Insurance Company, Inc. ("Nautilus") has filed a combined Motion to Dismiss and Motion for Summary Judgment (Doc. No. 81), seeking dismissal of all counterclaims asserted against it by Defendants-Counterplaintiffs American Community Services, Inc., LeVan P. Ellis, the In Crowd, Inc., Rodney A. Rankins, and Tolliny J. Rankins. Nautilus has filed a Memorandum in support of its Motion (Doc. No. 82), with attached exhibits, and a Statement of Undisputed Material Facts. (Doc. No. 93.) American Community Services, Inc. and Ellis (collectively, the "ACS Defendants") have filed a Response in opposition to Nautilus' Motion (Doc. No. 94), a Response to Nautilus' Statement of Undisputed Facts and Statement of Additional Disputed Material Facts (Doc. No. 96), and various documents and exhibits in support of their positions (Doc. Nos. 95). The In Crowd, Inc., Rodney Rankins and Tolliny Rankins (collectively, the "In Crowd Defendants") have filed a Response in which they adopt, *in toto*, the ACS Defendants' Response in opposition to Nautilus' Motion. (Doc. No. 97.) Nautilus has filed a Response to the ACS Defendants' Statement of Additional Disputed Material Facts (Doc. No. 101) and, with the Court's permission, a Reply brief (Doc. No. 103).

Also before the Court is the ACS Defendants' Motion to Strike certain materials filed with and relied upon in Nautilus' Reply Brief (Doc. No. 109), to which Nautilus has filed a Response (Doc. No. 112). The ACS Defendants have also filed a Motion to Compel production of certain documents they maintain are

relevant to their counterclaims (Doc. No. 105). Nautilus has responded in opposition to the motion to compel (Doc. No.111). Because this is a discovery-related motion, it was originally referred to the Magistrate Judge but will nonetheless be disposed of here.

Having considered the entire record in this matter, and for reasons explained more fully below, the Court will **GRANT** Nautilus' motion and will dismiss all counterclaims pending against it. Because the Court reaches its determination without consideration of the evidentiary materials submitted in conjunction with Nautilus' Reply, Defendants' Motion to Strike will be **DENIED** as **MOOT**. Finally, because the Defendants' counterclaims are dismissed, the pending Motion to Compel filed by the ACS Defendants will likewise be **DENIED** as **MOOT**, since the discovery sought is solely in support of the Defendants' dismissed counterclaims.

## II. STANDARD OF REVIEW

### A. The Present Motion

Nautilus styles its motion as a "combined" motion to dismiss and motion for summary judgment. Generally, a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "shall be made before pleading if a further pleading is permitted." Once an answer to a complaint or counterclaim has been served, a Rule 12(b)(6) motion is no longer timely. Notwithstanding, the Court may construe a motion styled as a Rule 12(b)(6) motion as a Rule 12(c) motion instead, which requires application of the same standard as that applied to a 12(b)(6) motion. See Fed. R. Civ. P. 12(h)(2); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11 (6th Cir. 1987).

Regardless, Nautilus, rather than the Defendants, submitted certain documents as exhibits to their original complaint in the declaratory judgment action that have been taken into consideration in resolution of the present motion. Although the exhibits were submitted with Nautilus' complaint, Nautilus stands in the position of counterdefendant in bringing its motion, so the Court finds that consideration of these materials requires consideration of the motion as one for summary judgment rather than as a Rule 12(b)(6) motion to

2

dismiss.[1]  Defendants do not dispute the authenticity of either of these documents, and the Court does not construe the allegations in the DePieros' Complaint as true and in fact does not consider them at all except insofar as they provide a basis for Nautilus to determine whether the claims asserted are covered under the Policy.

**B.  Rule 56 Motion for Summary Judgment**

Summary judgment, of course, shall be granted when "there is no genuine issue as to any material fact and . . . the non-moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When the evidence is such that no reasonable jury could return a verdict for the nonmoving party, there is no genuine issue of fact.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  If the nonmoving party has failed to produce evidence sufficient to establish an element of his claim, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A summary judgment motion places on the non-movant the burden of producing enough evidence to allow a reasonable factfinder to rule in his favor; a mere "scintilla of evidence" will not suffice.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989).

**III.  FACTUAL AND PROCEDURAL BACKGROUND**

**A.  Factual Background**

The facts set forth below are either undisputed or else undisputed for purposes of Nautilus's motion.

Nautilus is an insurance company based in Arizona and licensed to do business in Tennessee. (Am. Compl. ¶ 2; ACS' Am. Ans. ¶ 2.)  ACS is a corporation organized and existing under the laws of Indiana. (Am. Compl. ¶ 4; ACS' Am. Ans. ¶ 4.).  In Crowd is likewise a corporation organized and existing under the laws of Indiana with its principle place of business in Indiana.  (Am. Compl. ¶ 3; In Crowds' Ans. ¶ 3.)  On June 22, 2002, Nautilus issued a comprehensive commercial general liability insurance policy to In Crowd, Policy No. NC 188694 (the "Insurance Policy"), effective for a period of one year, and naming ACS as an additional insured.  (Am. Compl. ¶ 11; Defs.' Am. Ans. ¶ 11; Doc. No. 82, Ex. 13.)  The relationship between

---

[1]Ordinarily, a 12(b)(6) motion to dismiss is directed to the complaint as well as to any exhibits attached to it, see Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

3

In Crowd and ACS is not altogether clear to the Court, but it is apparent that they are affiliated in some manner, and that they engage in the business of selling magazine subscriptions door to door. (See Doc. No. 82, Ex. 13 (Insurance Policy, containing the statement: "Business Description: Magazine Sales").)

On August 4, 2003, Fe and Anthony DePiero[2] filed a lawsuit originally styled <u>Fe DePiero and Anthony C. DePiero v. American Community Services, Inc. et al.</u>, in Rutherford County Circuit Court, which was removed to the United States District Court for the Middle District of Tennessee, Nashville Division, Docket No. 3:03-0832 ("Underlying Lawsuit"). In the Underlying Lawsuit, the DePieros alleged that the ACS Defendants and the In Crowd Defendants, among others, had negligently hired and trained a salesman, Donnell Covington, and that Mr. Covington had raped, assaulted and robbed Ms. DePiero in her home while he was selling magazine subscriptions on behalf of In Crowd and/or ACS. (See Doc. No. 82, Ex. 1.)

Even prior to the filing of the Underlying Lawsuit, ACS and/or In Crowd had put Nautilus on notice of the DePieros' potential claims against them arising from the alleged assault. On August 11, 2003, unaware that suit had been filed, Nautilus advised the In Crowd Defendants that Nautilus was conducting an investigation into the DePieros' claim under a full reservation of rights, and specifically gave notice that Nautilus reserved the right to bring an action to declare the obligations and responsibilities of the parties under the Insurance Policy. (Doc. No. 82, Ex. 2.) The next day, after receiving a copy of the DePiero Complaint, Nautilus sent another letter in which it agreed to provide a defense to the In Crowd Defendants, subject again to an express reservation of rights. (Doc. No. 82, Ex. 3.) Shortly thereafter, ACS sent Nautilus a demand for defense and indemnification for any and all losses, costs or damages incurred by ACS in connection with the Underlying Lawsuit. (Doc. No. 82, Ex. 4.) Upon receipt of this demand, Nautilus retained counsel for the ACS Defendants too and agreed to provide a defense, but again specifically reserved its right to bring an action to declare the parties' rights, obligations and responsibilities under the Insurance Policy. (Doc. No. 82, Ex. 5.)

In connection with the Underlying Lawsuit, Nautilus paid $136,512.95 in attorneys' fees and expenses in its defense of the ACS and In Crowd Defendants against the DePieros' claims. (Doc. No. 82, Exs. 6, 7,

---

[2] Fe and Anthony DePiero were originally named as defendants in this action, but the claims against them have been dismissed without prejudice.

4

8.) Further, on or about October 14, 2004, Nautilus paid $626,000 of a total settlement amount of $800,000 to settle the DePieros' claims against the ACS and In Crowd Defendants, which payment was subject to its reservation of rights. (See Doc. No. 82, Exs. 12 and 14.)

**B. Procedural Background**

On January 29, 2004, while the Underlying Lawsuit was still pending, Nautilus filed a declaratory judgment action in this Court against the In Crowd and ACS Defendants, among others, seeking a determination of the parties' rights, obligations, and liabilities under the Insurance Policy. Specifically, Nautilus requests a declaration that no coverage is afforded by the Insurance Policy for the claims and demands made against the Defendants in the Underlying Lawsuit on the basis that (1) the acts of Donnell Covington, an employee or agent of the Defendants, were intentional acts of an "Insured," as that term is defined by the Policy, causing damages for which the Insurance Policy does not provide coverage; (2) the In Crowd Defendants fraudulently failed to disclose prior claims of sexual abuse and negligent hiring that had been asserted against them; and (3) the Insurance Policy does not provide coverage for punitive damages.

In addition to filing their Answers, the In Crowd and ACS Defendants filed Counterclaims against Nautilus alleging that Nautilus, by virtue of the act of filing its declaratory judgment action in this Court, breached a duty of good faith and fair dealing and acted negligently and in bad faith (all as part of "Count I"), breached the insurance contract (Count II), and violated the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.* ("TCPA") (Count III). (See ACS Defs.' Am. Countercl. (Doc. No. 37); In Crowd Defs.' Countercl. (Doc. No. 48).)

Nautilus filed an Answer to ACS's Amended Counterclaim[3] but has now filed its combined 12(b)(6) Motion to Dismiss and Motion for Summary Judgment seeking dismissal of each of those claims. In support of its motion, Nautilus argues that Tennessee does not recognize a common-law tort of bad faith between an insurer and an insured and that the Defendants have not pleaded the necessary elements of a statutory bad-faith claim under Tenn. Code Ann. § 56-7-105; and that Defendants have simply failed to state a claim for negligence, breach of contract, or violation of the TCPA. In addressing the Defendants' claims, Nautilus

---

[3]The docket reflects that no Answer was filed to the In Crowd Defendants' Counterclaim, but that Counterclaim is identical in all respects the ACS Defendants' Counterclaim, which has been answered.

5

assumed, for purposes of its motion, that Tennessee law applies.

In their response, Defendants expressly abandoned their claims for breach of contract, negligence, and bad faith, conceding that their cause of action is based solely upon the Tennessee Consumer Protection Act. (See Doc. No. 94, at 3 n.2.) They maintain that they have stated a valid claim and that genuine issues of material fact preclude summary judgment of the TCPA claim. More confusing is the fact that Defendants appear to be arguing that the question of whether Nautilus engaged in conduct that violated the TCPA should be determined under principles of Illinois insurance law. (See Doc. No. 94, at 12.)

In its Reply Brief, Nautilus contends that Indiana law rather than Illinois law should apply to the claims in its underlying Declaratory Judgment action. Nautilus includes as exhibits additional evidence in support of its arguments as to which state's law should apply and its claim that misrepresentations contained on the application for insurance void the contract of insurance as a whole. (See Doc. No. 103, Exs. 1-7.)

In response to Nautilus' Reply, the ACS Defendants have filed a Motion to Strike those new materials, including excerpts from a deposition of ACS employee Tina Green; a Memorandum Opinion from the United States District Court for the Eastern District of Tennessee involving ACS and a different insurer; an application signed by John Damiani that pertains to allegedly new legal arguments not made in the original Motion to Dismiss; and Articles of Incorporation for In Crowd. The ACS Defendants argue that it is "unfair for Nautilus to have a second bite at the apple particularly with respect to matters that it knew or should have known about when it filed the original Motion for Summary Judgment," because they do not have the opportunity to respond or to rebut these documents. (Doc. No. 109, at 2.)

Nautilus, in response to the Motion to Strike, claims that the Defendants essentially changed the focus of their claims in their Response: Instead of arguing merely that the filing of a *meritless* declaratory judgment action constitutes a TCPA violation, they are now allegedly claiming that the filing of a *frivolous* declaratory judgment action constitutes a TCPA violation. (See Doc. No. 112, at 4–5.)

The Court will now address the merits of the parties' arguments.

## IV. DISCUSSION

### A. The Documents Defendants Seek To Strike Are Not Material To Nautilus' Motion.

The documents attached to Nautilus' Reply brief to which Defendants object were all produced in

6

support of Nautilus' argument that Indiana law, rather than Illinois law, should apply to the interpretation of the Insurance Policy.  As indicated above, however, the sole remaining issue before the Court at this time is whether dismissal of the Defendants' TCPA claim is warranted.  Obviously, the TCPA is a Tennessee statute, and Tennessee law applies to any cause of action for an alleged violation thereof.  The choice-of-law question, while obviously relevant to resolution of Nautilus's underlying declaratory judgment action, is not pertinent to a ruling on Nautilus' motion to dismiss.  The Court has therefore reached its ruling on Nautilus' motion without reference to the documents attached to Nautilus' Reply Brief.  The ACS Defendants' Motion to Strike will therefore be denied as moot.

### B.  Defendants' TCPA Claim Is Wholly Without Merit.

The stated purpose of the TCPA is to "protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state." Tenn. Code Ann. § 47-18-102(2).  The TCPA is remedial rather than regulatory in nature, and it specifically provides a private right of action for any "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce."  Tenn. Code Ann. § 47-18-104(a) & -(b).  The TCPA includes a nonexclusive list of the unfair or deceptive acts or practices that are prohibited.  This list does not specifically address the acts or practices of insurance companies, but it includes a general, "catch-all" provision which prohibits "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27).  Thus, the Tennessee Supreme Court has held that "the acts and practices of insurance companies" may fall within the purview of the TCPA.  Myint v. Allstate Ins. Co., 970 S.W.2d 920, 925 (Tenn. 1998).

This Court is not aware, however, of any case finding a TCPA violation under facts similar to those presented here—that is, where the insurance company provides a defense for the insured and pays a settlement while expressly reserving its rights to contest coverage, and then files a declaratory judgment action to have a court determine the issue of coverage.  In Myint, for instance, plaintiffs brought suit against Allstate Insurance Company based upon a denial of coverage.  Even though the jury found Allstate liable for coverage under the policy, the Tennessee Supreme Court affirmed summary dismissal of the TCPA claim, noting, "The record reveals no evidence of an attempt by Allstate to violate the terms of the policy, deceive

7

the Myints about the terms of the policy, or otherwise act unfairly. It is apparent that the denial of the Myints' claim was Allstate's reaction to circumstances which Allstate believed to be suspicious. Consequently, Allstate's conduct does not fall within the purview of the Tennessee Consumer Protection Act[.]" Myint, 970 S.W.2d at 926. Cf. Stooksbury v. Am. Nat'l Prop. and Cas. Co., 126 S.W.3d 505, 519, 520 (Tenn. Ct. App. 2003) (affirming jury verdict against the defendant insurance company on the issue of coverage, but reversing the jury finding of a TCPA violation where it was clear that the defendant had "substantial legal grounds supporting its position that Plaintiffs' insurance coverage had been cancelled prior to the date of loss," regardless of whether the defense was ultimately unsuccessful, and there was "no material evidence to support the jury's conclusion that Defendant engaged in deceptive or unfair acts"); Newman v. Allstate Ins. Co., 42 S.W.3d 920 (Tenn. Ct. App. 2000) (affirming trial court's dismissal of TCPA claim, despite damages award to insured, because there was no evidence the insurer engaged in an unfair or deceptive act or practice when attempting to resolve the insured's complaints about repairs to her car); Parkway Assocs., LLC v. Harleysville Mut. Ins. Co., 129 Fed. Appx. 955, 960–61 (6th Cir. May 5, 2005) (applying Tennessee law) (affirming summary judgment for the defendant on the plaintiff's TCPA claim, finding the plaintiff failed to state such a claim because she did not explain how she was misled or deceived by the acts she complained about).

      Liberally construing their Response in opposition to summary judgment, the Court understands the Defendants' position to be that the TCPA applies in this case because Nautilus "wrongful[ly] fil[ed] a frivolous lawsuit in Tennessee" "when it knew it had absolutely no basis in law or fact to deny coverage under the Policy." (Doc. No. 94, at 9, 10.) Further, Defendants appear to argue that there is, at the very least, a jury question as to whether Nautilus, in filing its declaratory judgment action, violated the TCPA by "attempt[ing] to violate the terms of the Policy and otherwise act[ing] unfairly." (Doc. No. 94, at 11.) Rather than pointing to facts that might support an inference of an attempt to deceive on the part of Nautilus, Defendants' brief is devoted to an explanation of why Nautilus's declaratory judgment action should fail on the merits. Defendants do not explain how they were deceived or misled by any action taken by Nautilus. Likewise, in their respective Counterclaims, the Defendants set forth allegations that go to the merits of the underlying declaratory judgment action. None of these allegations remotely suggests how Nautilus acted to deceive or

8

mislead Defendants when it provided a defense and paid a settlement all under a reservation of rights, and then filed suit to obtain a judicial declaration as to its obligations under the Policy. Quite simply, to paraphrase the Tennessee Supreme Court, Defendants point to "no evidence of an attempt by [Nautilus] to violate the terms of the policy, deceive the [Defendants] about the terms of the policy, or otherwise act unfairly." See Myint, 970 S.W.2d at 926.

Moreover, without going so far as to address the actual merits of Nautilus's declaratory judgment action, the Court finds that Nautilus has raised substantial legal grounds supporting its position that the Policy does not provide coverage for the damages asserted in this case, Defendants' blustering objections to the contrary notwithstanding. More specifically, there are apparently legitimate factual disputes regarding (1) whether Donnell Covington qualifies as an "insured" under the Policy;[4] (2) which state's laws govern interpretation of the insurance policy;[5] and (3) whether misrepresentations were made on the insurance application that may be attributed to any of the Defendants.[6]

The Defendants' Counterclaims are completely meritless. If any party has made claims in this case

---

[4]The DePieros' Complaint alleges that Donnell Covington was a "representative" or employee of both ACS and In Crowd. As set forth in both of Nautilus' "reservation of rights" letters, the Insurance Policy provides coverage for "sums the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Doc. 82, Ex. 2, at 1.) However, coverage will be provided only if the bodily injury or property damage "is caused by an 'occurrence' that takes place in the 'coverage territory.' " (id. at page 2.) "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id.) An exclusion provides that the insurance does not apply to " '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (Id. at page 2.) The policy defines "insured" to include "employees," "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." (Id. at page 3.) Nautilus (and the DePieros') alleged that Covington was an employee. Defendants maintain that he was an independent sales representative. Resolution of that fact question may (or may not) determine whether he was an "insured" under the Policy. In either event, the legal issue to be resolved is whether the "occurrence" that caused the damages in the Underlying Suit was the Defendants' act of hiring Covington or Covington's intentional criminal acts, and whether those damages are covered by the terms of the Insurance Policy.

[5]The policy appears to have been "delivered" in Illinois, but there are facts in the record that strongly suggest Indiana is the state with "most significant relationship" to the parties and the Policy. See Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998). Defendants maintain that Illinois law applies and that they win on the merits under Illinois law. Nautilus maintains that Indiana law applies and that, at worst, it has a legitimate basis for contesting coverage under Indiana law and the Policy language.

[6]There are clearly disputed issues of fact as to whether any representations were made by any agent whose acts may be attributed to one or more of the Defendants. The existence of this factual dispute alone is sufficient to establish that Nautilus' assertion of the defense of misrepresentation is not frivolous.

9

that might be subject to Rule 11 sanctions, it is not Nautilus.

### C. Defendants' Motion to Compel Is Moot.

The ACS Defendants seek to compel production of documents from Nautilus they apparently hope will support their claims that Nautilus allegedly knew it had no legitimate legal basis for contesting coverage of the DePiero Lawsuit. (See Doc. Nos. 105, 108.) Because the Counterclaims are being dismissed, the discovery sought is no longer relevant to any issue. The Motion to Compel will therefore be denied as moot.

### V. CONCLUSION

For the reasons set forth herein, Nautilus' combined Motion to Dismiss/Motion for Summary Judgment will be granted and Defendants' counterclaims shall all be dismissed in their entirety. The Motion to Compel and Motion to Strike will be denied as moot.

An appropriate order will enter.

*Thomas A. Wiseman, Jr.*
Thomas A. Wiseman, Jr.
Senior U.S. District Judge